[Civ. No. 27691.    Second Dist., Div. Two.    Mar. 23, 1964.]

Estate of ELSIE McCORD HUDSPETH, Deceased. DON-
ALD M. HUDSPETH, Claimant and Appellant, v.
BETTY D. EARLYWINE et al., Claimants and Re-
spondents.

Norman S. Berliner for Claimant and Appellant.

Warren M. Goodwin for Claimants and Respondents.

KINCAID, J. pro tem.*—Appeal is taken herein by Donald M. Hudspeth as the son of Gresham Benjamin Hudspeth, the predeceased husband of the decedent Elsie McCord Hudspeth from a decree determining interests in her estate. The only record furnished us on appeal is the clerk's transcript, a reference therein to two of the exhibits and a partial reporter's transcript limited to the trial judge's oral summation from the bench given in advance of his written

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

findings of fact, conclusions of law and decree determining interests in the estate.

From this partial record it appears that a trial on the merits was held, evidence was received and the court found in effect that the decedent above named, whose maiden name was Elsie Sport and who was also known as Elsie McCord, was married to Gresham under the common law of the State of Nebraska during or about the year 1923. That the said Gresham died on October 2, 1946, and at the time of his death was the husband of the decedent. That the decedent died intestate on July 5, 1961, in the County of Los Angeles, unmarried and left no issue. That the claimant, Donald, is the son of the said Gresham. That no portion of the estate of the decedent was the separate property of Gresham and no part of the estate of the decedent was the community property of the decedent and Gresham which, upon his death belonged or went to the decedent by virtue of its community character, or came to the decedent from the said Gresham by gift, descent, devise or bequest, or became vested in the decedent on his death, by right of survivorship in a homestead or in a joint tenancy between them or was set aside as a probate homestead. That all property owned by the decedent at the time of her death and all property of her estate was her separate property and had its source in and was derived from her separate property and the proceeds thereof. That the petitioners Betty Earlywine, Dartelle Sheridan and Elmore E. Waller are grandnieces and grandnephew of the decedent, being the grandchildren of Stella Sport Schuler, sister of the decedent, and the decedent left surviving her no parents, brothers, sisters, children of deceased brothers and sisters, nor did she leave any grandnieces or grandnephews other than those above named.

As conclusions of law the court found that no portion of the estate of the above named decedent descended to the claimant, Donald, upon the death of the decedent, and that he is not entitled to any interest in the estate of the decedent. That upon the death of the decedent, her estate descended to her heirs at law the two grandnieces and the grandnephew above named and is now vested in them, subject to the administration of the above named estate, in the following proportions: Dartelle one-third, Elmore one-third, and Betty Earlywine one-third thereof. The decree determining interests in the estate followed in accord with these findings.

Appellant Donald claims an interest in the estate of dece-

dent through his heirship as the son of her predeceased husband Gresham pursuant to the provisions of sections 228[1] and 229[2] of the Probate Code.

It is well settled that in determining the character of property for the purpose of applying sections 228 and 229 of the Probate Code, it is the source of its acquisition and not the nature of its ownership immediately before death, which is controlling. (*Estate of Reizian*, 36 Cal.2d 746, 749 [227 P.2d 249]; *Estate of Abdale*, 28 Cal.2d 587 [170 P.2d 918].)

It is incumbent upon the appellant to make it affirmatively appear that error was committed by the trial court and to present a transcript which affirmatively shows on its face that error. (*Utz* v. *Aureguy*, 109 Cal.App.2d 803, 806-807 [241 P.2d 639]; *Richard* v. *Richard*, 123 Cal.App.2d 900, 902 [267 P.2d 867].)

The burden of proving that the property he sought to have distributed to him came within the purview of sections 228 or 229 of the Probate Code rested upon the appellant. (*Estate of Woolman*, 187 Cal.App.2d 573, 574 [9 Cal.Rptr. 648].) The rule as to section 228 is properly stated in *Estate*

[1]Section 228. ''If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead, or in a joint tenancy between such spouse and the decedent or was set aside as a probate homestead, such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation.''

[2]Section 229. ''If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation.''

*of Adams,* 132 Cal.App.2d 190, 204 [282 P.2d 190]: ". . . Upon his death intestate the heirs of the wife who, by virtue of section 228, become the statutory heirs of the husband, are entitled under that section in the circumstances there set forth, to one-half of the property that was formerly community property. But the burden is on them to prove what was community property, and to trace it into the estate of the surviving spouse. That burden requires two steps in the proof. First, as already pointed out, the predeceased spouse's heirs must prove what portion of the property was community property at the time of the death of the predeceased spouse. In making that proof, as already held in this opinion, the presumption is that property acquired or in possession during the marriage was community property. Then the heirs of the predeceased spouse have the burden of tracing the community property into the property found in the estate of the surviving spouse. In meeting this burden such heirs now find the presumptions reversed. Now the presumption is, that the property in the estate of the surviving spouse is the separate property of the surviving spouse, and, under the rule of the cases cited above, the heirs of the predeceased spouse must overcome that presumption by tracing the community property existing at the death of the predeceased spouse into the estate of the surviving spouse. Failing to so trace the community property by overcoming the presumption of separate character, the property in the estate of the surviving spouse must be treated as the separate property of the surviving spouse and distributed to his blood heirs." In situations arising under Probate Code section 229, relating to claimed separate property of a previously deceased spouse, the burden of proof similarly applies.

The record before us is devoid of evidence proving that any portion of the estate of Elsie McCord Hudspeth was community property of decedent and her previously deceased spouse Gresham or belonged or went to her by virtue of its community character on his death or came to her from him by gift, descent, devise or bequest, or through any other connection with him. The same is true as to any showing that her estate or any part thereof came to her from the separate property of said previously deceased spouse.

The only evidence relating to the source of acquisition of the property owned by decedent immediately before her death is the interlocutory decree of divorce entered

March 1, 1946, in a divorce action between Gresham and Elsie in Los Angeles County, No. D 264288. Both parties there alleged there was no community property owned by them and the decree carries into effect the stipulation of the parties that all property rights, claims and demands between them be finally determined by the payment by Elsie to Gresham of $2,000 in money and the delivery of several small items of personal property; that Elsie be decreed to be the sole owner of leases on auto parks at Venice, California, together with the auto parking business operated by her thereon, an automobile and household furniture. This interlocutory decree was never vacated on motion for new trial or under section 473 of the Code of Civil Procedure nor was appeal taken therefrom. Although Gresham died within the subsequent year and a final judgment of divorce was never entered the determination of the property issues in the interlocutory decree became final and was no longer subject to modification. The interlocutory decree became a conclusive adjudication and is res judicata with respect to all issues determined. (*Leupe* v. *Leupe*, 21 Cal.2d 145, 148 [130 P.2d 697].)

Appellant contends that the summation remarks of the trial judge prior to rendition of judgment disclose erroneous reasoning in reaching the final findings and decree. ■ Although a memorandum opinion of the trial judge may be examined on appeal for the purpose of aiding in the interpretation of the findings and conclusion (*Moore* v. *Ojai Improvement Co.*, 152 Cal.App.2d 124, 128 [313 P.2d 47]) the function of a trial court opinion is limited. Although such an opinion may aid the appellate court to ascertain the process by which a judgment has been reached, it will not be used in determining whether or not the findings of the court are supported by the evidence. The question that concerns the reviewing court is whether or not the final decision, judgment or order is correct and not whether the reasons expressed in the opinion are in harmony with the results reached or whether they sustain the decision. ■ Nor may any antecedent expression of the judge whether casual or cast in the form of an opinion, impeach, or in any way restrict his absolute power to declare, his final conclusion by filing the findings of fact, conclusions of law and judgment provided for by the Code of Civil Procedure. (*Ciriniconi* v. *Green*, 175 Cal.App.2d 812, 815 [346 P.2d 867]; *Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902, 907

[185 P.2d 396].)  ▮  The findings and conclusions of the court are fully supported by the evidence herein.

Appellant complains that the findings of fact, conclusions of law and the decree were signed by the court without acceding to his request for certain additional findings. The findings as made herein are as to all the ultimate facts necessary to support the judgment.  ▮  The trial court is required to find only the ultimate facts and findings upon merely evidentiary facts are unnecessary, and if made are surplusage. (*Wishart* v. *Claudio*, 207 Cal.App.2d 151, 153 [24 Cal.Rptr. 398].)

The judgment is affirmed.

Herndon, Acting P. J., and Roth, J., concurred.